**NOT FOR PUBLICATION**

```
┌─────────────────────────────────┐
│          FILED                  │
│   JAMES J. WALDRON, CLERK       │
│                                 │
│      AUGUST 11, 2008            │
│                                 │
│    U.S. BANKRUPTCY COURT        │
│         NEWARK, N.J.            │
│   BY: s/ Ronnie Plasner, DEPUTY │
└─────────────────────────────────┘
```

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In Re: | Case No.: 05-20471 (DHS) |
| **JUANITA JONES-GOLD**, | Judge: Donald H. Steckroth, U.S.B.J. |
| Debtor. | |

**OPINION**

**APPEARANCES:**

Scott E. Tanne, Esq.
110 Summit Avenue
Chatham, New Jersey 07928
*Counsel for Debtor*

Fein, Such, Kahn & Shepard, P.C.
Tammy L. Terrell, Esq.
7 Century Drive, Suite 201
Parsippany, New Jersey 07054
*Counsel for Secured Creditor*
*ABN AMRO Mortgage Group, Inc.*

Marie-Ann Greenberg, Esq.
Office of the Chapter 13 Standing Trustee
30 Two Bridges Road, Suite 230
P.O. Box 10215
Fairfield, New Jersey 07004

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the court is a motion filed by Juanita Jones-Gold ("Debtor"), to compel ABN AMRO Mortgage Group, Inc. ("Creditor") to credit her for forced-placed flood insurance and to apply this credit to mortgage arrears under the Debtor's Chapter 13 Plan. The Debtor alleges that the Creditor incorrectly designated her property as being located in an area that required flood insurance and seeks a credit of $11,972.60 ($13,800.00 that Debtor paid for the flood insurance minus a partial refund received from the Creditor in the amount of $1,827.40). However, because the Creditor's proof of claim consisted of the Debtor's arrears in the amount of $15,267.09 (of which the Trustee has already disbursed $4,179.29), the Debtor requests an $884.80 refund. In addition, during the time that this motion has been pending before the court, ABN AMRO transferred the mortgage to Citimortgage, Inc. ("Citimortgage"). Citimortgage filed opposition arguing that the Debtor is not entitled to any additional refund since she had avenues to properly object to the flood insurance payments at an earlier time.

**Statement of Facts and Procedural History**

In 1999, the Debtor obtained a mortgage on property located at 940 Potter Avenue, Union, New Jersey, 07083-7622 ("Property"), from the Creditor, who also purchased forced-placed flood insurance on the Property to be paid out of Debtor's escrow. *Certification in Support of Notice of Motion to Compel ABN AMRO Mortgage Group, Inc. to Credit Debtor for Forced Placed Flood Insurance and Apply Credit to Mortgage Arrears in Debtor's Chapter 13 Plan ("Att'y Cert.")*, at ¶3. The Creditor classified the Debtor's property as being located in zone A2, a zone for which the Federal Emergency Management Agency ("FEMA") mandates that properties carry flood insurance, and thus it purchased the insurance. *Supplemental Affirmation in Support of Objection to Debtor's*

*Motion to Compel ("Citigroup's Supp. Obj.")*, at Exhibit A. The Debtor asserts she insisted from the beginning that the property was never located in a flood zone. *Att'y Cert.* at ¶3. The Creditor states that there is no evidence suggesting that the Debtor previously raised the issue with the Creditor. *Citigroup's Supp. Obj.* at ¶5. The Creditor maintained the insurance from February 28, 2001 until September 20, 2006 with an annual premium in the amount of $2,300.00, which was paid from the Debtor's escrow. *Att'y Cert.* at ¶4. Thus, over the approximately six (6) years the policy was in force, the Debtor was charged a total of $13,800.00 for flood insurance. *Id.* at ¶12.

On November 2, 2006, the Creditor notified the Debtor that the Property was no longer in a flood zone and cancelled the forced-placed flood insurance effective September 20, 2006. *Id*. at ¶5. It explained the change by stating that it "[w]as contacted and advised that while Debtor's property was at one time located in a flood zone designated as A2, it was now in a flood zone with the designation X." *Citigroup's Letter Objection*. Properties located in zone X are not required to have flood insurance. *Id.* at Exhibit A. As a result of the cancellation, the Creditor gave the Debtor a partial refund of $1,827.40 on November 7, 2006. *Att'y Cert.* at ¶5; *Citigroup's Letter Objection*.

The Debtor alleges that the Property was never located in zone A2 and points to a 1978 FEMA zone map indicating that her Property was located in zone C, an area of minimal flooding according to the map lgend. *Att'y Cert.* at ¶10. In 2006, when FEMA revised its classification system, all non-flood zones were designated as X. *Id.* at ¶9. However, although the labels of the zones were changed, the actual zone boundaries remained unchanged. *Id.* at ¶11. Noting this consistency in boundaries, the Debtor claims that her Property has been changed to zone X because it was erroneously categorized as zone A2 initially. *Id*. Zone A2 was, and remains, a flood area. *Id*. The Debtor supports this assertion with a copy of a Department of Environmental Protection,

3

Division of Water Resources ("DEP"), web page showing that, unlike township maps, FEMA maps were not updated. *Hr'g Tr., May 28, 2008*, at 10:00.

Additionally, the Debtor notes that in 1974, prior to the building of any structures on her Property, the Township of Union, New Jersey constructed a storm sewer easement to protect the property from possible flooding. *Supplemental Certification in Support of Notice of Motion to Compel ABN AMRO Mortgage Group, Inc. to Credit Debtor for Forced Placed Flood Insurance and Apply Credit to Mortgage Arrears in Debtor's Chapter 13 Plan ("Att'y Supplemental Cert.")*, at ¶¶5-6. The Township constructed the storm sewer in compliance existing DEP standards and followed specific guidelines and ordinances enacted to assist storm sewer development. *Id*. Because of this easement, the Debtor received and continues to receive a quarterly tax credit of $300.00 from the Township. *Hr'g Tr., May 28, 2008*, at 11:25. Moreover, the Debtor stated during oral argument that the Township and her title insurance company insure the Property precisely because she has the easement. *Id*. at 8:45. While Debtor's previous lender initially required her to purchase flood insurance, after doing research, the lender notified her that she was not in a flood area and that no such insurance was necessary. *Id*. at 9:20. As this previous lender did not require flood insurance, the Debtor protested the Creditor's determination that she did in fact need it. *Id*. at 9:40.

Conversely, the Creditor points to an advisory on FEMA's web site which indicates that the Debtor's "property is located in a high risk flood area." *Citigroup's Letter Objection* at Exhibit B. The FEMA web site further states that "[i]f the bank makes a determination that the property is located in a Special Flood Hazard Area, it must require the borrower to purchase flood insurance." *Id*. at Exhibit C. If the borrower disagrees with this determination, the borrower may request FEMA

to review it. *Id*. The request must be postmarked no later than forty-five (45) days after the borrower is notified of the flood insurance requirement. *Id*. If the request is postmarked after forty-five (45) days, or if FEMA does not receive all the necessary information within the forty-five (45) day limit, it will not review the lender's determination and "the flood insurance requirement [will] stand." *Id*. There is no evidence that the Debtor contacted FEMA regarding this issue within the requisite time period.

At the closing, on July 8, 1999, the Debtor signed a Flood Insurance Authorization, a standard form that must be signed by all borrowers. *Att'y Supplemental Cert.* at ¶3. The form states that the National Flood Insurance Reform Act of 1994 requires the purchase of flood insurance "where appropriate," i.e., when the lender determines that flood insurance is necessary because the property is located in a Special Flood Hazard Area. *Id*. The document also indicates that if a dispute or uncertainty exists on the part of the borrower or lender as to whether the property is located in a Special Flood Hazard Area, the parties may jointly request FEMA to resolve the matter. *Citigroup's Supp. Obj.* at ¶6. In addition to the Flood Insurance Authorization, the Debtor signed a Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance, which states that the Debtor's building is in a Special Flood Hazard Area. *Citigroup's Supp. Obj.* at ¶4, Exhibit A.

## Discussion

There are a number of cases that deal with the issue of whether a mortgagor has a cause of action for a mortgagee's or third-party's mistaken determination that the mortgagor's property was *not* located in a Special Flood Hazard Area ("SFHA") under 42 U.S.C. § 4012a[1]. *See, e.g.,*

---

[1] 42 U.S.C. § 4012a mandates that "[e]ach Federal entity for lending regulation. . .shall by regulation direct regulated lending institutions not to make, increase, extend or renew any loan secured by improved real estate or a mobile home located or to be located in an area that has been identified by the Director as an area having special flood

*Wentwood Woodside I LP v. GMAC Commercial Mortgage Corp.*, 419 F.3d 310, 323 (5th Cir. 2005); *Mid-Am. Nat'l Bank of Chicago v. First Sav. & Loan Ass'n of S. Holland*, 737 F.2d 638, 642 (7th Cir. 1984); *Arvai v. First Fed. Sav. & Loan Ass'n*, 698 F.2d 683, 684 (4th Cir. 1983); *Hofbauer v. Nw. Nat'l Bank*, 700 F.2d 1197, 1201 (8th Cir. 1983).  However, in the present case, the Debtor does not rely on 42 U.S.C. § 4012a in support of her claim.  Thus, the Court turns to cases dealing with a party's obligation to read the closing documents pertaining to insurance and make proper, timely objections.

In New Jersey, an insured party has a duty to examine insurance policies and if the terms disclosed by such an examination are inconsistent with the parties' desires or understanding, the insured is required to notify the company of the inconsistency and of her refusal to accept the policy in the particular condition.  *In re The Nw. Mut. Life Ins. Co.*, 70 F. Supp. 2d 466, 488 (D.N.J. 1999) (quoting *Martinez v. John Hancock Mut. Life Ins. Co.*, 367 A.2d 904, 909 (N.J. Super. Ct. App. Div. 1976)) (holding that the plaintiff cannot rely on defendant insurance company's oral representations that contradicted the language of the policy itself and the documentation given to plaintiff prior to delivery of the policy.)

In *Martinez v. John Hancock Mutual Life Insurance Co.*, 367 A.2d 904, 907 (N.J. Super. Ct. App. Div. 1976), the plaintiff and his business partner applied to the defendant insurance company for a life insurance policy with accidental death benefits ("ADB").  Defendant issued the policies but denied the applicants' ADB request.  *Id*.  Attached to the policies were forms requesting that applicants acknowledge the rejection with their signatures.  *Id*.  Defendant purportedly received the two forms with the applicants' signatures.  *Id*. at 908.  The plaintiff's partner subsequently died from

---

hazards and in which flood insurance has been made available under the National Flood Insurance Act of 1968, unless the building or mobile home and any personal property securing such loan is covered for the term of the loan by flood insurance. . . ."  42 U.S.C. § 4012a(b)(1) (2008).

stab wounds inflicted during an altercation, and the plaintiff submitted a claim to the defendant insuror for double indemnity based upon the accidental nature of his partner's death. *Id*. The defendant denied the plaintiff's claim having rejected the request for ADB at the time of the issuance of the policy. *Id*. However, at trial it was stipulated that the signatures acknowledging the defendant's rejection of ADB were forged. *Id*. At issue before the court was whether the fact that plaintiff was unaware that defendant rejected the ADB request allowed him to collect the accidental death benefits. *Id*. In its consideration, the court observed that (1) the policy document at issue was conspicuous in its failure to mention the ADB coverage; (2) the policy was "not a particularly lengthy, impossibly complex and affirmatively misleading policy" so that, at the very least, the absence of an ADB clause would have alerted the average reader; (3) plaintiff had the policy for eighteen (18) months prior to the accident and thus had ample opportunity to read it; and (4) the insurance agent's forgery had "no effect in inducing the plaintiff to do, or refrain from doing, anything" since the plaintiff was not aware of the forgery or "the instrument to which his name was forged." *Id*. at 909-10. The court determined the plaintiff had a duty to acquaint himself with the terms of the insurance policy and reject the terms if they were contrary to his desires. *See id.* at 912. Having failed to do so, the court held that the plaintiff was barred from recovering the accidental death benefits. *Id*.

While the *Martinez* plaintiff did not receive the insurance requested, in the present case, the Debtor was provided with insurance that she allegedly did not need. The underlying principle that an insured party has a duty to examine her policies and refuse to accept the policy for failure to satisfy her desires is the same. Whereas in *Martinez* an absent ADB clause should have alerted the plaintiff that the insurance was not what he expected it to be, the document that the Debtor signed

at the closing (Notice of Special Flood Hazards and Availability of Federal Disaster Relief Assistance) stated that her Property was in a SFHA. Additionally, the Debtor alleges that she raised her concerns to the Creditor regarding the necessity of flood insurance because her previous lender informed her that it was not needed. Thus, in both cases, the parties were, or should have been, on notice that the insurance they were paying for was unsatisfactory to them. Similarly, while the insurance agent did not induce the plaintiff to act or refrain from acting in *Martinez*, the Creditor's actions did not prevent the Debtor from challenging the Creditor's determination that she needed flood insurance. Indeed, both the Flood Insurance Authorization, which the Debtor signed at the closing and the FEMA web site, indicated that if a borrower questioned the correctness of a lender's determination, she could apply to FEMA for a resolution. Finally, the Debtor in the present case had approximately six (6) years to inspect and challenge the requirement of a policy. Thus, because the Debtor acknowledged that the Property was in a flood zone at the time of closing and had ample opportunity to examine the necessity for flood insurance and challenge the requirement based upon a possible FEMA finding that the insurance was unnecessary, she cannot now be credited the money she paid for the forced-placed flood insurance.

Moreover, after such a lengthy time of accepting the forced placed insurance, the Debtor should be banned from reimbursement based upon equitable principles. It is well known that "the length of delay, the reasons for the delay, and the 'changing conditions of either or both parties during the delay'" are factors to consider in deciding whether a party is barred from enforcing her rights by virtue of estoppel, laches and waiver. *Twp. of Piscataway v. Duke Energy*, 488 F.3d 203, 214 (3d Cir. 2007) (quoting *Lavin v. Bd. of Educ. of the City of Hackensack*, 447 A.2d 516, 520 (N.J. 1982)). Notably, the *Lavin* court asserted that the length of delay alone, without consideration of

the other factors, may result in laches. *Lavin*, 447 A.2d at 520. However, the court went on to consider the delay as well as the changing conditions of the parties. *Id*.

In *Lavin*, a New Jersey statute provided that a public school teacher who had been in active military service was entitled to receive an employment credit from her employer for the time period she served. *Id*. at 517. Thus, if a new teacher had served one year in the military, she would be entitled to a salary of a teacher who has already taught one year. The plaintiff worked for the Hackensack Board of Education for nine (9) years before writing to the Superintendent of Schools of the Hackensack Board of Education claiming credit for her three (3) years of military service. *Id*. The issue before the court was whether the plaintiff could retroactively receive the accumulated difference between what she should have been earning with military service credit during those nine (9) years and the salary she was actually earning during that time. *Id*. On one hand, the court noted that apparently neither the Board nor the plaintiff was aware of the statute. *Id*. at 520. On the other, the court observed that (1) the plaintiff made her claim nine (9) years after her employment began, (2) the Board relied on plaintiff's inaction in computing its budget, and (3) there would be a tax burden on the taxpayer because the costs associated with paying the plaintiff should have been distributed over a ten (10) year period. *Id*. at 520-21. Based on these factors, the court held that plaintiff's retroactive recovery of past due sums should be denied. *Id*. at 521.

In *Township of Piscataway v. Duke Energy*, the township and a number of homeowners brought an action to prevent the removal of fifty (50) shade trees along a public street. *Twp. of Piscataway* 488 F.3d at 206. The issue before the Third Circuit was whether the energy company was barred by the doctrine of laches from asserting their easement right to remove the trees in order to "lay, operate, renew, alter, inspect and maintain" their pipes. *Id.* at 214. The District Court held that the forty- (40-) year delay in asserting the right to remove the trees was "inexcusable and prejudicial to homeowners" who purchased their homes relying on the non-assertion of the right. *Id.* The Third Circuit, however, held that new standards in managing gas transmission pipelines and recently increased vigilance raised a genuine issue of material fact as to the justifiability of the Company's delay. *Id.* at 216.

Similar to the case in *Lavin*, the Debtor waited an extensive period of time (approximately six (6) years) before filing her claim. However, while in *Lavin* the court observed that neither party knew of the existence of the relevant statute, the Debtor in the present case was, or should have been, aware of her rights. She signed documents at closing that determined and indicated that her home was in a SFHA and informed her that disputes over this determination are to be resolved by FEMA. The Debtor asserts that she has been protesting the payments throughout the six (6) years. She also was sensitive to the flood insurance requirement because she was initially required to make similar payments by her previous lender, who subsequently informed her that flood insurance was unnecessary. Thus, the Debtor in the case at bar could have asserted her rights in the manner required at an earlier point in time.

**Conclusion**

For all of the foregoing reasons, the Debtor's motion to compel the Creditor to credit her for forced-placed flood insurance premiums and to apply this credit to mortgage arrears under the Debtor's Chapter 13 Plan is denied.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached hereto.

/s / *Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: August 11, 2008